## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Capricia Geer,                                      ) | C/A No. 0:21-243-PJG |
|                                                 ) | |
| Plaintiff,                ) | |
|                                                ) | **ORDER ON PLAINTIFF'S APPEAL** |
| v.                                                ) | **FROM THE SOCIAL SECURITY** |
|                                                ) | **ADMINISTRATION'S DENIAL OF** |
| Kilolo Kijakazi, Acting Commissioner of the ) | **SOCIAL SECURITY BENEFITS** |
| Social Security Administration,[1]     ) | |
|                                                ) | ☒ Affirmed |
| Defendant.              ) | ☐ Reversed and Remanded |
|                                                ) | |

This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 (D.S.C.) and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying the plaintiff's claims for social security benefits.

**Part I—Plaintiff seeks:**

☒     Supplemental Security Income ("SSI"): Plaintiff's age at filing: 36

☒     Disability Insurance Benefits ("DIB"): Date last insured: December 31, 2022

☐     Other:

Application date: September 19, 2017

Plaintiff's Year of Birth: 1981

Plaintiff's alleged onset date: April 14, 2017

**Part II—Social Security Disability Generally**

Under 42 U.S.C. § 423(d)(1)(A), (d)(5), and/or 42 U.S.C. § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) and/or § 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations generally require the Administrative Law Judge ("ALJ") to consider five issues in sequence, as outlined below. 20 C.F.R. § 404.1502(a)(4) and/or § 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

A claimant has the initial burden of showing that he/she is unable to return to past relevant work because of his/her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the named defendant because she recently became the Acting Commissioner of Social Security.

capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A) and/or § 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## Part III—Administrative Proceedings

Date of ALJ Decision: November 4, 2020

In applying the requisite five-step sequential process, the ALJ found:

Step 1:   Plaintiff was engaged in substantial gainful activity during the relevant time period:
☐ Yes  ☒ No

Step 2:   ☒ Plaintiff has the following severe impairments:

[D]egenerative disc disease, left ACL injury, bilateral carpal tunnel syndrome, right thumb trigger finger, bipolar disorder, and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

☐ Plaintiff does not have a severe impairment.

Step 3:   ☒ Plaintiff's impairment(s) does/do not meet or medically equal a Listing. 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:   Plaintiff's Residual Functional Capacity is as follows:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift 20 pounds occasionally and 10 pounds frequently. The claimant can stand and walk for four hours, in combination. The claimant can occasionally climb ramps and stairs, and can never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can perform frequent handling, fingering, and feeling bilaterally. The claimant can have no exposure to unprotected heights and moving machinery. The claimant can perform simple, routine tasks with a reasoning level of 2 or less, performed in two-hour blocks of time. The claimant can have no more than occasional public contact in the workplace, and no more than occasional contact with coworkers. The claimant may work in proximity to others, but cannot participate in team type activities. The claimant is limited to occasional, routine changes in work settings and duties.

☐ Plaintiff could return to his/her past relevant work.

Step 5:   ☐ Plaintiff could not return to his/her past relevant work, but using the Medical-Vocational Guidelines ("Grids") as a framework supports a finding that Plaintiff is not disabled. 20 C.F.R. Pt. 404, Subpt. P, App'x 2.

☒ Plaintiff could not return to his/her past relevant work, but there are jobs in the national economy that Plaintiff can perform, as follows:

- Sorter, 573.687-034, light, SVP 2/unskilled, reasoning level of 2. There are 200,000 positions nationally. The number of national jobs available [is] reduced to account for the additional limitation in standing and walking.
- Paper sorter and counter, 649.687-010, light, SVP 2/unskilled, reasoning level of 2. There are 217,000 positions nationally.

Date of Appeals Council decision: January 8, 2021

**Part IV—Standard of Review**

    Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017); Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589; see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." Biestek, 139 S. Ct. at 1154 (citation omitted). In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589; see also Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

**Part V—Issues for Judicial Review**

    **A. Incomplete and unexplained RFC.** A claimant's RFC must reflect the limitations imposed by all her medically determinable impairments, and the ALJ must explain her conclusions. In assessing Geer's RFC, the ALJ did not fully account for Geer's moderate limitations in interacting with others and maintaining concentration, persistence, and pace or explain why not. Does substantial evidence support an incomplete and unexplained RFC?

    **B. *DOT*-vocational testimony conflict.** Before relying on vocational testimony, the ALJ must identify and resolve any apparent conflicts with the *Dictionary of Occupational Titles*. The ALJ accepted testimony that Geer could do work that the DOT says requires abilities that the ALJ found she does not have. Does substantial evidence support a step five finding based on an unresolved conflict?

(Pl.'s Br. at 1, ECF No. 18 at 5.)

**Oral Argument:**

    ☐ **Held on** _____.

    ☒ **Not necessary for disposition.**

**Summary of Reasons**

**A.     Residual Functional Capacity Explanation**

    Plaintiff argues the ALJ failed to explain how the residual functional capacity ("RFC") accounts for her mental impairments. A claimant's RFC is "the most [a claimant] can still do despite [her] limitations" and is determined by assessing all of the relevant evidence in the case

record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing residual functional capacity, an ALJ should scrutinize "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting her conclusions with respect to a claimant's residual functional capacity. Further, "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)) (alterations in original); see also Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016).

Additionally, the United States Court of Appeals for the Fourth Circuit has repeatedly stated that "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)); see also Arakas v. Comm'r, 983 F.3d 83, 98 (4th Cir. 2020). Moreover, an ALJ continues to have an obligation to "include a narrative discussion describing how the evidence supports each conclusion." Monroe v. Colvin, 826 F.3d 176, 190 (4th Cir. 2016) (quoting Mascio, 780 F.3d at 636); see also SSR 96-8p. Similarly, remand may be appropriate when the courts are left to guess at how the ALJ arrived at the conclusions and meaningful review is frustrated. Mascio, 780 F.3d at 636-37. The ALJ must "build an accurate and logical bridge from the evidence to [her] conclusions." Monroe, 826 F.3d at 189.

Plaintiff contends the ALJ failed to adequately explain how the RFC accounts for her moderate limitations in mental functioning. As an initial matter, Plaintiff bears the burden of producing evidence demonstrating how her impairments affected her functioning during the

relevant time period.  See 20 C.F.R. § 404.1512(c), 416.912(c); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Creegan v. Colvin, No. 1:13CV5, 2014 WL 3579659 (W.D.N.C. July 21, 2014) ("It is the claimant's burden, however, to establish her RFC by demonstrating how her impairment impacts her functioning.").  In Mascio, the Fourth Circuit held that remand was warranted in part because the ALJ's hypothetical question to the vocational expert was legally insufficient in that it failed to include—without any explanation by the ALJ—the ALJ's finding of moderate limitation on the claimant's ability to maintain concentration, persistence, or pace at Step Three.  Mascio, 780 F.3d at 638 (agreeing with other circuits that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work" but acknowledging that an ALJ may be able to explain why Mascio's "moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity").  However, the Fourth Circuit further determined not to impose a categorical or *per se* rule that a finding of moderate limitations at Step Three would always result in a specific limitation in the residual functional capacity and held that the determinations would need to be made on a case-by-case basis.  See Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020).

      Specifically, Plaintiff asserts that notwithstanding her moderate limitations in interacting with others, the ALJ failed to include limitations related to interactions with supervisors.[2]  Plaintiff

---

[2] The court observes that some courts have found that Mascio extends to moderate limitations in areas outside of concentration, persistence, and pace.  See, e.g., Linares v. Saul, No. 5:19-CV-00129-FDW, 2020 WL 5878448, *4 (W.D.N.C. Oct. 2, 2020) (extending Mascio to moderate limitations in social functioning).

argues that although the ALJ limited Plaintiff's interaction with coworkers and the public, the ALJ erred by failing to also limit her interaction with supervisors or explain why a limitation was not necessary. Plaintiff also argues that the ALJ failed to explain how limiting her to simple, routine tasks with reasoning level two or less in two-blocks of time accounted for her moderate limitations in concentration, persistence, and pace.

However, as argued by the Commissioner, the ALJ's analysis was proper under Mascio, as the ALJ adequately explained her RFC findings and those findings were supported by substantial evidence. The Commissioner points out that the ALJ: considered Plaintiff's examination findings, treatment, daily activities, and testimony, as well as opinion evidence from Plaintiff's family physician (Dr. Matthew Hardy), the psychological consultative examiner (Dr. Rebecca Sorrow), and the reviewing state agency psychologists. (Tr. 19-23.) As mentioned above, the court may not analyze the facts and reweigh the evidence presented, as such action is contrary to the substantial evidence standard of review that this court is bound to apply at this stage in the proceedings. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence); Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence). Here, unlike in Mascio, the court finds that the ALJ sufficiently explained the claimant's residual functional capacity and the Plaintiff has failed to direct the court to sufficient contradictory evidence in the record. Cf. Mascio, 780 F.3d at 636 (agreeing that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite

contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review") (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)) (alterations in original).

As to Plaintiff's social limitations, Plaintiff may point to isolated records in support of her position such as (1) a report where Plaintiff responded, "not much," when asked "[h]ow well do you get along with authority figures?" (Tr. 449); (2) Plaintiff's statement that she "gets nervous when people look over her shoulder when she was working" (Tr. 517); (3) an altercation with the police resulting in the police breaking her window, handcuffing her, and her involuntary commitment in April 2020 (Tr. 3012); and Plaintiff's refusal to cooperate with her providers during her commitment and occasional confrontational behavior with providers. (Tr. 1354, 3013, 3015, 3016, 3018, 3306, 3562, 3776.) Here, the ALJ specifically considered records indicating defensive behavior, a hostile attitude, and uncooperative behavior, as well as Plaintiff's involuntary commitment. (Tr. 17.) The ALJ compared these records with examinations indicating normal findings, including that Plaintiff was calm, cooperative, and able to answer complex questions with complex responses. (Tr. 18.) The ALJ found that Plaintiff was not consistently compliant with her medications and that the record revealed poor compliance with her medications at the time of her inpatient treatment in April 2020. (Id.) The ALJ explained that she found Dr. Sorrow's opinion, which included a finding that Plaintiff's "history of interpersonal difficulties would probably interfere with her ability to interact well with coworkers and the general public," generally persuasive. (Tr. 19.) Thus, the ALJ supported her findings with discussion and cites to the records concerning Plaintiff's social limitations. Cf. Dennis v. Berryhill, 362 F. Supp. 3d 303, 309 (W.D.N.C. 2019) (finding that an ALJ failed to adequately explain how a vocational expert's

requirement that Plaintiff be in an environment where he can receive guidance but work independently does not translate into a limitation on interacting with coworkers or supervisors).

As to Plaintiff's concentration, persistence, and pace, Plaintiff argues that the ALJ failed to address her ability to stay on task for a full workday. However, the ALJ limited Plaintiff not just to "simple, routine tasks with a reasoning level of 2 or less"; the ALJ also limited them to being "performed in two-hour blocks of time." (Tr. 15.) This limitation coincides with the state agency psychologists' opinions that Plaintiff could "attend to and perform simple tasks without special supervision for at least two-hour periods." (Tr. 19.) Additionally, the ALJ found persuasive Dr. Sorrow's opinion that Plaintiff "was probably capable of the concentration and focus needed to perform simple tasks and follow simple instructions." (Id.) As to opinion evidence and testimony that may suggest greater limitations, the ALJ specifically found this evidence unpersuasive, findings that Plaintiff has not challenged. Here, the ALJ considered the contradictory evidence, such as indications of impaired concentration and indications of normal attention, and found that the above RFC adequately accounted for Plaintiff's credible limitations.

In sum, the ALJ in this case sufficiently addressed Plaintiff's severe mental impairments and explained why the psychological evidence and Plaintiff's statements supported limitations including, "simple, routine tasks with a reasoning level of 2 or less, performed in two-hour blocks of time," "no more than occasional public contact in the workplace, and no more than occasional contact with coworkers," and the ability to "work in proximity to others, but cannot participate in team type activities." (Tr. 15-16.) The ALJ's discussion of the record allows for meaningful review of these findings, her decision is supported by substantial evidence, and remand is not necessary.

**B.        Vocational Expert Testimony**

As part of the ALJ's duty at Step Five of the sequential process, the ALJ must resolve any apparent conflicts between a vocational expert's testimony and the <u>Dictionary of Occupational Titles</u> ("DOT"). See <u>Pearson v. Colvin</u>, 810 F.3d 204, 208-11 (4th Cir. 2015); SSR 00-04p, 2000 WL 1898704. The United States Court of Appeals for the Fourth Circuit explained that

> [a]n ALJ cannot rely unquestioningly on a VE's testimony. Rather, an ALJ must ensure that any "apparent" conflicts between the Dictionary and the VE's testimony are reasonably resolved. SSR 00-4P, 2000 WL 1898704 at *2. To that end, the ALJ must ask the VE whether his or her testimony conflicts with the DOT. If the answer is "yes," the ALJ "must elicit a reasonable explanation for the conflict before relying on" the testimony. <u>Id.</u> But even if the VE answers "no," the ALJ has an affirmative "duty to make an independent identification of apparent conflicts." <u>Pearson v. Colvin</u>, 810 F.3d 204, 210 (4th Cir. 2015). This means that the ALJ must recognize and resolve ways in which a VE's testimony "seems to, but does not necessarily," conflict with the "express language" of the DOT—even if the conflict is not "obvious." <u>Id.</u> at 209.

<u>Thomas v. Berryhill</u>, 916 F.3d 307, 313 (4th Cir. 2019).

Plaintiff argues that an apparent conflict exists between the testimony provided by the vocational expert and the occupational information in the DOT, and that the ALJ erred in failing to resolve this conflict. Specifically, Plaintiff argues that she was limited to four hours of standing and walking, in combination, which conflicts with the light work jobs identified as they require six hours standing and/or walking. Upon review of the testimony and questions posed by the ALJ, the court disagrees and finds that the issue was addressed by the ALJ and the vocational expert.

In this case, the ALJ asked the vocational expert a variety of hypotheticals. Pertinent here, the ALJ first asked:

> I would like for you to consider an individual who is limited to light work. That's lifting 20 pounds occasionally and 10 pounds frequently. Can sit six of eight hours and stand and walk six each. The individual can occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds. Occasionally balance, stoop, kneel, crouch and crawl. The individual can perform frequent handling, fingering and feeling bilaterally and can have no exposure to unprotected heights and moving

machinery. She can perform simple routine tasks, with a reasoning level of 2 or less, performed in two hour blocks of time. There can be no more than occasional public contact in the workplace, and no more than occasional contact with coworkers. [INAUDIBLE] the individual can work in proximity to others, but not in team type activities. Finally, she would be limited to occasional routine changes in work settings and duties.

(Tr. 94.) In response, the vocational expert identified three occupations that an individual with these limitations may perform: housekeeper, DOT # 323.687-014, hand packager, DOT # 559.687-074; and sorter, DOT # 573.687-034.[3] The ALJ then provided hypothetical number two, which corresponds to Plaintiff's RFC, as follows:

> Q  All right. For hypothetical #2, all limitations would remain the same, except that standing and walking would be limited to four hours in combination. How would that affect the jobs that are available under the hypothetical? Would light work still be available?
> A  Light work still would be available, Your Honor. The sorting job would be reduced to 200,000 jobs.
> Q  Okay.
> A  And the hand packaging job would also be reduced to 145,000 jobs. Then the housekeeping job could not be performed with those limitations and I would need to give you another one to replace that.
> Q  Okay.
> A  There would be work as a paper sorter and counter, the DOT #649.687-010. There would be 217,000 jobs in the national economy. This too is a light job, with an SVP of 2 and a reasoning level of 2.

(Tr. 96.)

Thus, review of the testimony demonstrates that the ALJ specifically asked if the light work jobs would still be available if the standing and walking were reduced to four hours, and the vocational expert reduced the availability of two of the jobs, eliminated one job, and provided a third job in its place. Accordingly, the vocational expert explicitly addressed Plaintiff's concern

---

[3] The vocational expert initially identified hand washer, DOT # 361.687-030, as a representative occupation. However, the ALJ observed an apparent conflict between the DOT and the stooping limitation in the hypothetical. The vocational expert agreed that and identified sorter as an alternative job. (Tr. 95-96.)

in his testimony.  Based on the foregoing, the court finds that Plaintiff has failed to demonstrate the existence of an *apparent unresolved conflict* between the vocational expert's testimony and the DOT.[4]

## ORDER

☒ **Affirmed.  Plaintiff has failed to show that the Commissioner's decision was unsupported by substantial evidence or controlled by an error of law.**

☐ **Reversed and remanded pursuant to ☐ Sentence Four ☐ Sentence Six of 42 U.S.C. § 405(g) for further consideration consistent with this Order.**

☐ **Reversed and remanded for an award of benefits.**

**IT IS SO ORDERED.**

January 28, 2022                                       _____
Columbia, South Carolina                          Paige J. Gossett
                                                                UNITED STATES MAGISTRATE JUDGE

---

[4] The court notes that in Plaintiff's Reply brief she summarily states that the Commissioner's decision is "constitutionally defective," citing the recent Supreme Court cases of Collins v. Yellen, 141 S. Ct. 1761 (2021), and Seila Law, LLC v. Consumer Financial Protection Bureau, 140 S. Ct. 2183 (2020), as well as a Memorandum Opinion for the Deputy Counsel to the President on the Constitutionality of the Commissioner of Social Security's Tenure Protection.  However, Plaintiff fails to make any actual argument on this issue, and further, the court observes that it is raised for the first time in the Reply brief.  See Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to 'develop its argument—even if its brief takes a passing shot at the issue.' ") (alterations and citation omitted).